Patrick. R. Leverty, Esq.
NV Bar No. 8840
pat@levertylaw.com
**LEVERTY & ASSOCIATES LAW, CHTD.**
832 Willow Street
Reno, NV 89502
Telephone: (775)322-6636

William B. Federman
(admitted *pro hac vice*)
Kennedy M. Brian
(admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
T: (405) 235-1560
F: (405) 239-2112
E: wbf@federmanlaw.com
E: kpb@federmanlaw.com

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| **KEVIN MEAGHER** and **REBECCA DAWSON** on behalf of themselves and on behalf of all other similarly situated individuals,<br><br>    Plaintiffs,<br><br>v.<br><br>**KTC HOLDING COMPANY F/K/A THE KINGDOM TRUST COMPANY**,<br><br>    Defendant. | Case No. 2:24-cv-01630-CDC-MDC<br><br>Hon. Judge Cristina D. Silva<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

i

1

## TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................1

III.  SUMMARY OF THE PROPOSED SETTLEMENT TERMS.................................3

    A.  The Settlement Class.................................................................. 3

    B.  The Non-Reversionary Settlement Fund................................................ 3

    C.  Settlement Benefits. .................................................................... 3

    D.  Business Practice Changes. ............................................................ 4

    E.  The Proposed Notice Program. ........................................................ 4

    F.  Objection and Opt-Outs. ............................................................... 5

    G.  Attorneys' Fees, Costs, Expenses and Service Awards. .............................. 6

IV.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE ...............6

    A.  *Hanlon* Factors 4 and 6 and Fed. R. Civ. P. 23(e)(2)(B): the Settlement was Negotiated at Arm's Length; there is No Evidence of Collusion; and the Stage in Which Settlement was Reached Supports Preliminary Approval. .................................................... 8

    B.  *Hanlon* Factor 3 and 5: the Amount Offered in Settlement and the Experience and Views of Counsel................................................................................. 9

    C.  Fed. R. Civ. P. 23(e)(2)(A): Proposed Settlement Class Counsel and the Proposed Class Representative are Adequate Representatives................................................ 11

    D.  *Hanlon* Factors 1 and 2 and Fed. R. Civ. P. 23(e)(2)(C)(i): the Strength of Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of Further Litigation; and the Costs, Risks, and Delay of Trial and Appeal. ...................................................... 12

    E.  Fed. R. Civ. P. 23(e)(2)(C)(iii): the Terms of Any Proposed Award of Attorneys' Fees... 14

    F.  Fed. R. Civ. P. 23(e)(2)(C)(iv): Any Agreement Required to be Identified....................... 15

    G.  Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Distributing Relief is Effective................. 15

    H.  Fed. R. Civ. P. 23(e)(2)(D): Class Members are Treated Equitably Relative to Each Other. ………………………………………………………………………………..16

iv

I.   *Hanlon* Factor 7: the Reaction of the Class. ....................................................... 16

V.  THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR SETTLEMENT

PURPOSES ..............................................................................................................16

A.   The Settlement Class Meets the Requirements of 23(a). ..................................... 17

B.   The Settlement Class Meets the Requirements of 23(b)(3). ................................ 18

VI. THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER

RULE 23 AND SHOULD BE APPROVED. ...........................................................19

VII. CONCLUSION ..........................................................................................................20

## TABLE OF AUTHORITIES

**CASES**

*Acuna v. So. Nev. T.B.A. Supply Co.*,

   324 F.R.D. 367 (D. Nev. 2018) ............................................................................ 6, 17

*Amchem Prods., Inc. v. Windsor*,

   521 U.S. 591, 620 (1997); *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ................. 17, 18

*Andersen v. Briad Rest. Grp., LLC*,

   No. 214CV00786GMNBNW, 2022 WL 181262 (D. Nev. Jan. 19, 2022) ........................... 7, 10

*Barbosa v. Cargill Meat Sols. Corp.*,

   297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................. 15

*Boudreaux v. Systems East, Inc.*,

   No. 5:23-cv-01498 (N.D.N.Y.) ................................................................................ 9

*Carter v. Vivendi Ticketing US LLC*,

   No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) ........................ 9

*Churchill Vill., L.L.C. v. Gen. Elec.*,

   361 F.3d 566 (9th Cir. 2004) .................................................................................. 7

*Cohen v. Coca-Cola Co.*,

   No. LA CV19-04083 JAK (PLAX), 2022 WL 22879570 (C.D. Cal. Feb. 18, 2022) ................. 8

*Corra v. ACTS Ret. Servs., Inc.*,

   No. CV 22-2917, 2024 WL 22075 (E.D. Pa. Jan. 2, 2024) .............................................. 12

*Darlene Johnson, et al. v. LifeBridge Health, Inc.*,

   No. 24-C-18-006801 (Md. Cir. Ct., Baltimore City) .................................................. 9

*Desue v. 20/20 Eye Care Network, Inc.*,

   No. 21-CIV-61275-RAR, 2023 WL 4420348 (S.D. Fla. July 8, 2023) ................................ 10

*Evans v. Wal-Mart Store, Inc.*,

   No. 210CV1224JCMVCF, 2020 WL 886932 (D. Nev. Feb. 24, 2020) ................................ 20

*Fox v. Iowa Health Sys.*,

    No. 3:18-CV-00327-JDP, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .................................. 12

*Fulton-Green v. Accolade, Inc.*,

    No. 18-274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019)......................................................... 12

*Gaston v. FabFitFun, Inc.*,

    2021 WL 6496734 (C.D. Cal. Dec. 9, 2021)............................................................................ 13

*Gordon v. Chipotle Mexican Grill, Inc.*,

    No. 17-cv-01415-CMA-SKC, 2019 WL 6972701 (D. Colo. Dec. 16, 2019) ........................... 12

*Hanlon v. Chrysler Corp.*,

    150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 7, 18

*Harbour v. California Health & Wellness Plan*,

    No. 5:21-CV-03322-EJD (N.D. Cal. Jan. 16, 2024) ................................................................. 9

*Hashemi v. Bosley, Inc.*,

    No. CV 21-946 PSG (RAOX), 2022 WL 18278431 (C.D. Cal. Nov. 21, 2022) ................. 13, 14

*In re Anthem, Inc. Data Breach Litig.*,

    327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................... 14

*In re Banner Health Data Breach Litig.*,

    No. 2:16-CV-02696-SRB, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020)................................ 16

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

    No. 3:20-MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024)..................................... 13

*In re Blackbaud, Inc., Customer Data Breach Litig.*,

    No. 3:20-MN-02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024)..................................... 13

*In re Bluetooth Headset Prods. Liab. Litig.*,

    654 F.3d 935 (9th Cir. 2011) ................................................................................................... 7

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,

    No. 3:08-1998, 2010 WL 3341200 (W.D. Ky. Aug. 23, 2010) ................................................. 12

*In re Forefront Data Breach Litig.*,

   No. 21-CV-887, 2023 WL 6215366 (E.D. Wis. Mar. 22, 2023) ................................. 15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,

   293 F.R.D. 21 (D. Me. 2013) ........................................................................................ 13

*In re Novant Health, Inc.*,

   No. 1:22-CV-697, 2024 WL 3028443 (M.D.N.C. June 17, 2024) ................................ 15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,

   No. 1:17-md-2807, 2019 WL 3773737 (N.D. Ohio Aug. 12, 2019) ............................. 12

*In re Stable Rd. Acquisition Corp.*,

   No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .................... 15

*In re Syncor ERISA Litig.*,

   516 F.3d 1095 (9th Cir. 2008) ........................................................................................ 7

*In re Tableware Antitrust Litig.*,

   No. C-04-3514 VRW, 2007 WL 4219394 (N.D. Cal. Nov. 28, 2007) ......................... 9

*In re the Home Depot, Inc.*, *Customer Data Sec. Breach Litig.*,

   No. 1:14-MD-02583-TWT, 2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ............................. 17

*In re US Fertility, LLC Data Security Litig.*,

   No. 8:21-cv-00299 (D. Md.) ........................................................................................... 9

*In re Wirsbo Non-F1807 YBFs*,

   No. 208CV1223NDFMLC, 2015 WL 13665077 (D. Nev. Oct. 26, 2015) ................ 7, 11

*Krant v. UnitedLex Corp.*,

   No. 23-2443-DDC-TJJ, 2024 WL 5187565 (D. Kan. Dec. 20, 2024) ....................... 15

*La Caria v. Northstar Location Servs., LLC*,

   No. 218CV00317GMNDJA, 2021 WL 94477 (D. Nev. Jan. 11, 2021) .................... 14

*Lalli v. First Team Real Est.-Orange Cnty.*,

   No. 820CV00027JWHADS, 2022 WL 8207530 (C.D. Cal. Sept. 6, 2022) ............... 10

1    *Lamie, et al. v. Lendingtree LLC*,

2        No. 3:22-cv-00307, 2024 WL 811519 (W.D.N.C. Feb. 27, 2024)................................... 9

3    *Lee v. Enter. Leasing Co.-W.*,

4        No. 3:10-CV-00326-LRH, 2015 WL 2345540 (D. Nev. May 15, 2015)................................... 16

5    *Linney v. Cellular Alaska P'ship*,

6        151 F.3d 1234 (9th Cir. 1998)................................................................. 8, 10

7    *Marshall v. Northrop Grumman Corp.*,

8        No. 16-CV-6794 AB (JCX), 2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) ........................... 14

9    *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*,

10       311 F.R.D. 590 (C.D. Cal. 2015) .................................................................. 17

11   *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,

12       2009 WL 9100391 (C.D. Cal. June 24, 2009)..................................................... 15

13   *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,

14       221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 14

15   *Perez v. Bodycote Thermal Processing, Inc.*,

16       No. CV 22-00145 RAO, 2024 WL 4329057 (C.D. Cal. Aug. 23, 2024)................................... 14

17   *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,

18       533 F. Supp. 3d 881 (N.D. Cal. 2020)........................................................... 9

19   *Sinanyan v. Luxury Suites Int'l*, LLC,

20       No. 215CV00225GMNVCF, 2018 WL 815551 (D. Nev. Feb. 8, 2018) ................................. 16

21   *Swans v. Fieldworks, LLC*,

22       No. 2:22-cv-07250, 2024 WL 1893327 (C.D. Cal. Apr. 12, 2024) ............................ 6

23   *Szymborski v. Ormat Techs., Inc.*,

24       No. 3:10-CV-132-RCJ, 2012 WL 4960098 (D. Nev. Oct. 16, 2012) ........................... 7

25   *Tyson Foods, Inc. v. Bouaphakeo*,

26       577 U.S. 442 (2016) ............................................................................. 19

27

28                                                  ix

*Tyus v. Wendy's of Las Vegas, Inc.*,

   No. 214CV00729GMNVCF, 2021 WL 2169928 (D. Nev. May 27, 2021)............................... 12

*Wahl v. Yahoo! Inc.*,

   No. 17-CV-02745-BLF, 2018 WL 6002323 (N.D. Cal. Nov. 15, 2018) .................................. 16

*Wolin v. Jaguar Land Rover N. Am., LLC*,

   617 F.3d 1168 (9th Cir. 2010) ................................................................................................. 19

**RULES**

Fed. R. Civ. P. 23 ..................................................................................................... passim

**TREATISES**

4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 (4th ed. 2002) ........................... 14

Manual for Complex Litigation (Fourth) § 21.632 (2004) ............................................... 6

x

## I.     INTRODUCTION

Plaintiffs Kevin Meagher and Rebecca Dawson (collectively, "Plaintiffs" or "Class Representatives") respectfully move pursuant to Federal Rule of Civil Procedure ("Rule") 23, for preliminary approval of a class action settlement between Plaintiffs and Defendant KTC Holding Company f/k/a The Kingdom Trust Company ("KTC" or "Defendant") (together with Plaintiffs, the "Parties"). The proposed Class Action Settlement Agreement (the "Settlement Agreement" or "SA"),[1] if approved, will resolve the claims asserted by Plaintiffs and the Settlement Class and will provide substantial monetary and non-monetary relief to Settlement Class Members whose personally identifiable information ("PII") may have been compromised in a data security incident KTC became aware of on or around March 1, 2024 (the "Data Incident").

For the reasons set forth below, Plaintiffs respectfully request entry of an order: (i) conditionally certifying the Settlement Class; (ii) granting preliminary approval of the Settlement Agreement; (iii) appointing Plaintiffs as Class Representatives; (iv) appointing Kennedy M. Brian and William B. Federman of Federman & Sherwood as Class Counsel ("Proposed Settlement Class Counsel"); (v) approving the proposed notice program and notices; (vi) directing that notice of the settlement be sent to the Settlement Class Members; (vii) approving the Claim Form and claims process; (viii) ordering the Settlement's opt-out and objection procedures; (ix) appointing RG/2 Claims Administration LLC as the Claims Administrator; (x) staying all deadlines in the action pending final approval of the settlement; (xi) setting a date for the Final Fairness Hearing; and (xii) granting such other relief and further relief as the Court deems just and proper.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

KTC is an independent qualified custodian for clients of registered investment advisors, broker-dealers, and investment sponsors. (First Am. Class Action Compl. ("Compl."), ¶ 22, ECF No. 13). Through these relationships, KTC acquired the PII of Plaintiffs and the Settlement Class. (*Id.* ¶ 28).

---

[1] The Settlement Agreement is attached hereto as **Exhibit 1**. All capitalized terms not defined herein shall have the meaning ascribed in the Settlement Agreement.

Plaintiffs allege that on or around March 1, 2024, cybercriminals gained access to KTC's network through an unauthorized SIM swap and accessed PII stored on KTC's network. (*Id.* ¶¶ 39, 41). The types of PII potentially accessed during the Data Incident included Social Security numbers, dates of birth, financial information, driver's license identification numbers, and passport numbers. (SA at p. 1). KTC identified approximately 31,676 individuals whose PII may have been impacted in the Data Incident. (*Id.*).

After the announcement of the Data Incident, on September 4, 2024, Plaintiff Kevin Meagher filed a putative class action lawsuit asserting claims against KTC relating to the Data Incident. (Class Action Compl., ECF No. 1). On November 8, 2024, Plaintiff Meagher filed an Amended Complaint asserting claims of: (i) negligence; (ii) breach of implied contract; (iii) breach of third-party beneficiary contract; (iv) breach of fiduciary duty; (v) unjust enrichment; (vi) violation of California's Unfair Competition Law; (vii) violation of California's Consumer Privacy Act; (viii) violation of California's Customer Records Act; and (ix) declaratory and injunctive relief. (ECF No. 13). The First Amended Complaint also added Rebecca Dawson as a plaintiff.

Following the filing of the First Amended Complaint, and over the course of several months, the parties engaged in arms' length settlement negotiations that included the informal exchange of information necessary to evaluate the respective strengths and weaknesses of the case. (SA at p. 2). On June 18, 2025, the parties virtually attended a formal mediation presided over by John DeGroote, Esq. (a highly experienced data breach mediator). (*Id.*). Although the Parties did not reach a settlement at the mediation, significant progress was made. (Declaration of William B. Federman in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Federman Decl."), ¶ 6 (attached hereto as **Exhibit 2**)). Following the mediation, the mediator submitted a confidential mediator's proposal, which was thoroughly evaluated and considered by both parties. (*Id.*). The mediator's proposal was ultimately accepted by both parties on July 2, 2025. (*Id.*). After the settlement was reached, the parties worked together to draft the Settlement Agreement, notice documents, and proposed orders. (*Id.*). Plaintiffs now submit to the Court the proposed class action settlement reached for preliminary approval.

III.    **SUMMARY OF THE PROPOSED SETTLEMENT TERMS**

   **A.  The Settlement Class**

The Settlement Agreement defines the Settlement Class as follows:

**Settlement Class**
[A]ll individuals who were sent a notice of data breach letter from Defendant concerning the Data Incident discovered by Defendant on or around March 1, 2024. The Settlement Class specifically excludes: Defendant KTC, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Settlement Class is any judge, justice, or judicial officer presiding over this matter and members of their immediate families and their judicial staff.

(SA, ¶ 28).

   **B.  The Non-Reversionary Settlement Fund.**

Pursuant to the terms of the Settlement Agreement, KTC will establish a non-reversionary Settlement Fund of **$780,000.00**. (*Id.* ¶ 38). The Settlement Fund will be used to pay for: (i) all Costs of Claims Administration; (ii) any service awards awarded to the Class Representatives; (iii) any attorneys' fees and litigation expenses awarded to Class Counsel; and (iv) benefits to those Settlement Class Members who submit a Valid Claim. (*Id.* ¶ 39).

   **C.  Settlement Benefits.**

The Settlement provides many meaningful benefits for Settlement Class Members to choose from. These benefits include:

Documented Monetary Losses. Settlement Class Members may submit a claim for a cash payment of up to $10,000.00 (per Settlement Class Member) for documented losses related to the Data Incident. (*Id.* ¶ 42). To receive a payment for Documented Monetary Losses, a Settlement Class Member need only attest that the losses or expenses were incurred as a result of the Data Incident and submit reasonable documentation supporting the losses. (*Id.*). Documented Monetary Losses may include, but are not limited to: (i) out of pocket credit monitoring costs that were incurred on or after March 1, 2024, through the date of Settlement Claim submission; (ii) unreimbursed losses associated with actual fraud or identity theft; and (iii) unreimbursed bank fees, long distance phone charges, postage, or gasoline for local travel. (*Id.*). This list of reimbursable

3

1    documented out-of-pocket expenses is not meant to be exhaustive, rather it is exemplary. (*Id.*).

2        Pro Rata Cash Payment. In addition to or instead of submitting a claim for Documented

3    Monetary Losses, a Settlement Class Member may claim a pro rata cash payment in the amount

4    estimated by Class Counsel of $100.00. (*Id.* ¶ 43). The payments will be calculated by dividing

5    remaining funds in the Settlement Fund, after payment of the Costs of Claim Administration, any

6    Court-approved service awards and attorneys' fees costs and expenses, Credit Monitoring and

7    Identity Restoration Services, and Documented Monetary Losses, by the number of eligible claims.

8    (*Id.*). The Pro Rata Cash Payments will be adjusted upwards or downwards based upon the number

9    of Valid Claims filed, as necessary to exhaust the Settlement Fund. (*Id.*).

10        Credit Monitoring Services. In addition to electing any of the other settlement benefits,

11    Settlement Class Members may claim two (2) years of credit monitoring services that will provide

12    the following benefits: (i) three-bureau credit monitoring; (ii) dark web monitoring; (iii) identity

13    theft insurance coverage for up to $1,000,000.00; and (iv) fully managed identity recovery services.

14    (*Id.* ¶ 44).

15        **D.  Business Practice Changes.**

16        Additionally, as part of the settlement consideration, KTC will provide a confidential

17    declaration to Class Counsel setting forth the remedial measures and the approximate cost of the

18    remedial measures it has implemented since the Data Incident to prevent a similar incident from

19    occurring in the future. (*Id.* ¶ 45).

20        **E.  The Proposed Notice Program.**

21        To notify the Settlement Class Members of the Settlement and their rights thereunder, the

22    Parties formulated a notice plan intended to provide the Settlement Class with the best practicable

23    notice under the circumstances, in accordance with Due Process.

24        No later than seven (7) days after entry of the Preliminary Approval Order, KTC will

25    provide the Claims Administrator—RG/2 Claims Administration LLC—with the Settlement Class

26    List. (SA, ¶ 52(a)). The Claims Administrator will then mail the Short Notice to the Settlement

27    Class, after first running the Settlement Class Member data through the United States Postal Service

28

4

("USPS") National Change of Address database to update any change of address on file with the USPS. (*Id.* ¶ 52(b)). In the event the mailed Short Notice is returned to the Claims Administrator by the USPS because the address of the recipient is no longer valid, and the envelope contains a forwarding address, the Claims Administrator will re-send the Short Notice to the forwarding address. (*Id.*). The Claims Administrator will also establish a Settlement Website and a toll-free hotline. (*Id.* ¶¶ 52(c)–(d)). If jointly requested by the parties, the Claims Administrator will send a reminder notice to the Settlement Class Members who have not yet made a claim if the claims rate is less than 3.0% forty-five (45) days prior to the Claims Deadline. (*Id.* ¶ 52(g)).

**F. Objection and Opt-Outs.**

The Settlement allows a sufficient period of time for Settlement Class Members who do not want to take advantage of the Settlement's benefits to opt-out or object.

Pursuant to the terms of the Settlement Agreement, any Settlement Class Member desiring to object to the Settlement Agreement must submit a timely written notice of his or her objection by the Objection Date. (*Id.* ¶¶ 58–59). All written objections must state: (i) the objector's full name, address, telephone number, and e-mail address (if any); (ii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (e.g., copy of notice, copy of original notice of the Data Incident); (iii) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (iv) a statement as to whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (v) the identity of any and all counsel representing the objector in connection with the objection; (vi) a statement as to whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vii) a list of all settlements to which the objector and/or their counsel have objected in the preceding three (3) years; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representation). (*Id.* ¶ 58). To be timely, written notice of an objection must be postmarked by the Objection Deadline and mailed to the designated Post Office box established by the Claims Administrator and

1  mailed to the clerk of the United States District Court for the District of Nevada, Las Vegas. It must

2  also contain the case name and docket number—*Kevin Meagher and Rebecca Dawson v. KTC*

3  *Holding Company F/K/A The Kingdom Trust Company*, Case No. 2:24-cv-01630. (*Id.*).

4       Furthermore, any person wishing to opt-out of the Settlement Class may individually sign

5  and timely submit written notice of such intent to the designated Post Office box established by the

6  Claims Administrator. (*Id.* ¶ 55). The written notice must clearly manifest a Person's intent to opt-

7  out of the Settlement Class. (*Id.*).

8       **G.  Attorneys' Fees, Costs, Expenses and Service Awards.**

9       Lastly, in recognition of the considerable work undertaken and the significant risk Proposed

10 Settlement Class Counsel and Plaintiffs faced, the Settlement Agreement allows Proposed

11 Settlement Class Counsel to seek: (i) up to one-third (1/3) of the Settlement Fund ($260,000.00) to

12 pay for Proposed Settlement Class Counsel's attorneys' fees, costs, and expenses; and (ii) service

13 awards of $2,500.00 to each of the Class Representatives ($5,000.00 total). (*Id.* ¶¶ 62–63).

14 **IV.   THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE**

15      Parties seeking approval of a class action settlement must satisfy the requirements of

16 Federal Rule of Civil Procedure 23(e). Pursuant to Rule 23(e), class action settlements are permitted

17 "only with the court's approval ...after a hearing and only on a finding that [the agreement] is fair,

18 reasonable, and adequate." Fed. R. Civ. P. 23(e). "The approval of a class action settlement

19 pursuant to Rule 23 takes places in two stages. First, the court preliminarily approves the settlement

20 pending a fairness hearing, temporarily certifies a settlement class and authorizes notice to the

21 class." *Acuna v. So. Nev. T.B.A. Supply Co.*, 324 F.R.D. 367, 379 (D. Nev. 2018). "At the

22 preliminary approval stage, the court 'must make a preliminary determination on the fairness,

23 reasonableness, and adequacy of the settlement terms.'" *Swans v. Fieldworks, LLC*, No. 2:22-cv-

24 07250, 2024 WL 1893327 (C.D. Cal. Apr. 12, 2024) (citing Manual for Complex Litigation

25 (Fourth) § 21.632 (2004)). "If the court preliminarily certifies the class and finds the proposed

26 settlement fair to its members, the court schedules a fairness hearing where it will make a final

27 determination as to the fairness of the class settlement." *Andersen v. Briad Rest. Grp., LLC*, No.

28

6

214CV00786GMNBNW, 2022 WL 181262, at *2 (D. Nev. Jan. 19, 2022). "The Ninth Circuit employs a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Wirsbo Non-F1807 YBFs*, No. 208CV1223NDFMLC, 2015 WL 13665077, at *3 (D. Nev. Oct. 26, 2015) (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)).

To evaluate the fairness, reasonableness, and adequacy of a class action settlement, the Ninth Circuit has formulated the following factors for district courts to consider: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) any evidence of collusion between the parties; and (7) the reaction of the class members to the proposed settlement (collectively, the "*Hanlon* factors"). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998);[2] *Szymborski v. Ormat Techs., Inc.*, No. 3:10-CV-132-RCJ, 2012 WL 4960098, at *2 (D. Nev. Oct. 16, 2012) (citing the *Hanlon* factors).

Federal Rule of Procedure 23(e)(2) was amended in 2018 and provides further guidance as to the requisite consideration when evaluating whether a class action settlement is fair, adequate, and reasonable:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>     (i) the costs, risks, and delay of trial and appeal;
>     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>     (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

As the Advisory Committee comments explain, "[t]he goal of [the] amendment [was] not to

---

[2] The *Hanlon* factors are coextensive with the factors identified in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) and *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

1    displace any factor" that would have been relevant prior to the amendment, but rather to address

2    inconsistent "vocabulary" that had arisen among the circuits and "to focus the court and the lawyers

3    on the core concerns" of the fairness inquiry." *Cohen v. Coca-Cola Co.*, No. LA CV19-04083 JAK

4    (PLAX), 2022 WL 22879570, at \*5 (C.D. Cal. Feb. 18, 2022) (quoting Advisory Committee

5    Comments to 2018 Amendments to Rule 23, Subdivision (e)(2)).

6          **A. *Hanlon* Factors 4 and 6 and Fed. R. Civ. P. 23(e)(2)(B): the Settlement was**

7          **Negotiated at Arm's Length; there is No Evidence of Collusion; and the Stage in**

8          **Which Settlement was Reached Supports Preliminary Approval.**

9          The Settlement presented to the Court for preliminary approval was negotiated at arm's

10   length and without collusion in accordance with Rule 23(e)(2)(B) and *Hanlon* Factors 4 and 6.

11         Shortly after the Data Incident was announced by KTC, Proposed Settlement Class Counsel

12   quickly worked to: (i) investigate the factual underpinning of the Data Incident and KTC's data

13   security posture; (ii) identify the appropriate forum for initiating the class action lawsuit; (iii)

14   research and evaluate the potential legal claims and their probability for success; (iv) interview

15   individuals impacted by the Data Incident; and (v) draft the complaint that initiated the lawsuit.

16   (Federman Decl., ¶ 8). After additional information was learned, the operative complaint was

17   amended to assert additional causes of action against KTC and add an additional plaintiff. (*Id.*).

18   After the First Amended Complaint was filed, the parties decided to explore the viability of early

19   resolution. (*Id.* ¶ 6). Before engaging in settlement negotiations, Proposed Settlement Class

20   Counsel requested, received, and reviewed informal discovery from KTC regarding the Data

21   Incident, affected Class Members, its remediation efforts, and insurance coverage.[3] (*Id.* ¶ 9). After

22   thoroughly evaluating the strengths and weaknesses of the case, Proposed Settlement Class Counsel

23   engaged in extensive arm's length settlement negotiations with counsel for KTC over the span of

24   _____

25   [3] Although formal discovery was not completed, this does not prohibit preliminary approval of the
     Settlement. "In the context of class action settlements, 'formal discovery is not a necessary ticket

26   to the bargaining table' where the parties have sufficient information to make an informed decision
     about settlement." *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998). This is

27   certainly the case here, where Proposed Settlement Class Counsel obtained sufficient informal
     discovery that allowed them to evaluate the strengths and weaknesses of Plaintiff's claims before

28   negotiating a Settlement. (Federman Decl., ¶¶ 6–9)

many weeks. (*Id.*). Then, the Parties attended a formal mediation overseen by an experienced data privacy mediator, John DeGroote, Esq. (*Id.*). It was only after significant arms' length negotiations—free of collusion—were the parties able to reach the settlement presented to the Court for preliminary approval. (*Id.*). The fact that the settlement was achieved through well-informed arm's length negotiations between counsel with significant experience in data breach class actions weighs in favor of preliminary approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel over an "extended period of time," those facts will weigh in favor of approval.") (citation omitted); *In re Tableware Antitrust Litig.*, No. C-04-3514 VRW, 2007 WL 4219394, at *3 (N.D. Cal. Nov. 28, 2007) (granting final approval, and holding that "extended negotiations that culminated in the settlement indicate that the agreement here was reached in a procedurally sound manner").

> **B.  *Hanlon* Factor 3 and 5: the Amount Offered in Settlement and the Experience and Views of Counsel.**

Through Proposed Settlement Class Counsel's efforts and negotiations, Proposed Settlement Class Counsel achieved a non-reversionary settlement fund of $780,000.00 for approximately 31,676 Settlement Class Members.[4] (SA, ¶¶ 29, 38). The Settlement provides three (3) components of relief: (i) cash payments to Settlement Class Members; (ii) credit monitoring services; and (iii) meaningful business practice changes. (*Id.* ¶¶ 41–45). Under the monetary

---

[4] The Settlement equates to an approximate per person value of $24.62. This amount far exceeds the per person value achieved in many other data breach cases. *See, e.g.*, *Carter v. Vivendi Ticketing US LLC*, No. SACV2201981CJCDFMX, 2023 WL 8153712 (C.D. Cal. Oct. 30, 2023) (data breach settlement with approximate per person value of $6.86); *Harbour v. California Health & Wellness Plan*, No. 5:21-CV-03322-EJD, ECF Nos. 52, 63 (N.D. Cal. Jan. 16, 2024) (data breach settlement with approximate per person value of $6.34); *Darlene Johnson, et al. v. LifeBridge Health, Inc.*, No. 24-C-18-006801 (Md. Cir. Ct., Baltimore City) (data breach settlement amounting to approximately $1.60 per Class Member); *In re US Fertility, LLC Data Security Litig.*, No. 8:21-cv-00299 (D. Md.) (data breach settlement amounting to approximately $6.39 per Class Member); *Lamie, et al. v. Lendingtree LLC*, No. 3:22-cv-00307, 2024 WL 811519 (W.D.N.C. Feb. 27, 2024) (data breach settlement amounting to approximately $12.66 per Class Member); *Boudreaux v. Systems East, Inc.*, No. 5:23-cv-01498, ECF Nos. 30, 32 (N.D.N.Y.) (approving data breach settlement with per person value of approximately $4.78). These comparators are not meant to diminish the relief achieved in those settlements, but exemplify the recovery obtained here.

component, all Settlement Class Members are eligible to submit a claim for Documented Monetary Losses up to $10,000.00 and a Pro Rata Cash Payment (estimated to be around $100.00). (*Id.* ¶¶ 42–43). Additionally, all Settlement Class Members may submit a claim for two (2) years of three-bureau credit monitoring services. (*Id.* ¶ 44). As to the last component, Proposed Settlement Class Counsel received assurances, in the form of a confidential declaration, that KTC has implemented certain measures to prevent the likelihood of another data incident from occurring in the future and the estimated cost of these measures. (*Id.* ¶ 45). These are meaningful benefits that mirror the relief Settlement Class Members could expect to receive only after a successful trial. In sum, the Settlement addresses the type of injuries and repercussions sustained by Settlement Class Members in the wake of the Data Incident and offers significant compensation to make each Settlement Class Member "whole." "[T]hrough the Settlement, Plaintiff[] and Class Members gain benefits without having to face further risk." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *8 (S.D. Fla. July 8, 2023); *see also Andersen*, 2022 WL 181262, at *4 ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (citing *Linney*, 151 F.3d at 1242).

This exceptional settlement was only obtained through the experience and skill of Proposed Settlement Class Counsel. (Federman Decl., ¶¶ 10–12). Proposed Settlement Class Counsel are highly experienced in this area of practice and have a well-respected reputation in the data privacy litigation sector. (*Id.* ¶ 12). Proposed Settlement worked hard and at great risk on behalf of the Settlement Class to obtain information from KTC regarding the Data Incident and utilized their experience and knowledge gained from other data breach class actions to negotiate a favorable Settlement here. (*Id.*). Based on the experience and views of Proposed Settlement Class Counsel this is an excellent result for the Settlement Class, which militates in favor of preliminary approval. (*Id.*); *see also Lalli v. First Team Real Est.-Orange Cnty.*, No. 820CV00027JWHADS, 2022 WL 8207530, at *9 (C.D. Cal. Sept. 6, 2022) (granting final approval of settlement where the Court was satisfied that Class Counsel's experience "allowed them to evaluate the merits of the claims and

risks associated with prosecuting them" and "Class Counsel also staunchly support[ed] the final outcome as fair and reasonable"); *In re Wirsbo Non-F1807 YBFs*, 2015 WL 13665077, at *5 (finding that the opinion of experienced counsel weighed in favor of the settlement).

**C.  Fed. R. Civ. P. 23(e)(2)(A): Proposed Settlement Class Counsel and the Proposed Class Representative are Adequate Representatives.**

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Here, both the Class Representatives and Proposed Settlement Class Counsel adequately represented the Settlement Class.

The Class Representatives pursued this litigation on behalf of the Class for the benefit of the Class. The Class Representatives demonstrated their adequacy by: (i) selecting well-qualified counsel; (ii) producing information and documents to their counsel to permit investigation and development of the complaint(s); (iii) being available as needed throughout the litigation; (iv) monitoring the litigation; (v) being willing to endure invasive discovery and depositions if needed; and (vi) reviewing the terms of the Settlement Agreement. (Federman Decl., ¶ 13). Plaintiffs' claims and interests align with those of the Settlement Class, and they approve of the Settlement. (*Id.*). Therefore, the Class Representatives have performed adequately.

Similarly, Proposed Settlement Class Counsel are adequate representatives. Proposed Settlement Class Counsel have extensive experience litigating complex class actions and have demonstrated ample success in litigating data breach class actions. (*Id.* ¶ 14). Proposed Settlement Class Counsel have adequately represented the Class by: (i) fully investigating the facts and legal claims; (ii) preparing the complaints; (iii) requesting, obtaining, and reviewing informal discovery from KTC regarding the Data Incident, affected Class Members, its remediation efforts and insurance coverage; and (iv) extensively negotiating the settlement terms. (*Id.*). The work done by Proposed Settlement Class Counsel to date provided them with sufficient information to negotiate this very favorable Settlement for the Class. (*Id.*). Thus, Proposed Settlement Class Counsel were also adequate representatives, and this factor weighs in favor of preliminary approval.

1    **D. *Hanlon* Factors 1 and 2 and Fed. R. Civ. P. 23(e)(2)(C)(i): the Strength of**

2    **Plaintiff's Case; the Risk, Expense, Complexity, and Likely Duration of**

3    **Further Litigation; and the Costs, Risks, and Delay of Trial and Appeal.**

4    "Approval of a class settlement is appropriate in cases in which there are significant barriers

5    plaintiffs must overcome in making their case." *Tyus v. Wendy's of Las Vegas, Inc.*, No.

6    214CV00729GMNVCF, 2021 WL 2169928, at *3 (D. Nev. May 27, 2021) (internal quotation

7    marks and citation omitted). This is precisely the issue in data breach litigation.

8    Data breach litigation is a cutting-edge area of the law that presents numerous developing

9    issues, evolving precedents, and unpredictable outcomes. *See, e.g.*, *In re Sonic Corp. Customer*

10   *Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019)

11   ("Data breach litigation is complex and risky. This unsettled area of law often presents novel

12   questions for courts. And of course, juries are always unpredictable."); *Gordon v. Chipotle Mexican*

13   *Grill, Inc.,* No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data

14   breach cases ... are particularly risky, expensive, and complex."); *Fulton-Green v. Accolade, Inc.*,

15   No. 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (noting data breaches are a "risky

16   field of litigation" because they "are uncertain and class certification is rare."); *Fox v. Iowa Health*

17   *Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) ("Data breach

18   litigation is evolving; there is no guarantee of the ultimate result."); *Corra v. ACTS Ret. Servs., Inc.*,

19   No. CV 22-2917, 2024 WL 22075, at *12 (E.D. Pa. Jan. 2, 2024) ("[T[he Court recognizes that

20   data breach cases such as this one are complex and risky, and recovery at trial is decidedly

21   uncertain—$350,000 in cash is significantly better than nothing."); *In re Countrywide Fin. Corp.*

22   *Customer Data Sec. Breach Litig.*, No. 3:08-1998, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23,

23   2010) (approving data breach settlement, in part, because "proceeding through the litigation process

24   in this case is unlikely to produce the plaintiffs' desired results). There was no clear path to success

25   in this case. Indeed, not one data breach case such as this has gone to trial. Despite these risks,

26   Proposed Settlement Class Counsel undertook this litigation on behalf of Plaintiffs and the Class.

27   This case was particularly risky, and Plaintiffs faced substantial hurdles if the litigation were

28

1    to continue. (Federman Decl., ¶¶ 15–16). Most notably, Plaintiffs faced the risk of surviving a

2    motion to dismiss, motion for summary judgment, and obtaining (and maintaining) class

3    certification. The class certification stage has proven fatal in many data breach cases. *See, e.g.*, *In*

4    *re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying

5    class certification in data breach class action); *Gaston v. FabFitFun, Inc.*, 2021 WL 6496734, at *3

6    (C.D. Cal. Dec. 9, 2021) ("Historically, data breach cases have experienced minimal success in

7    moving for class certification."); *In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-

8    MN-02972-JFA, 2024 WL 2155221 (D.S.C. May 14, 2024) (denying motion for class certification

9    in data breach case); *see also In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-MN-

10   02972-JFA, 2024 WL 5247287 (D.S.C. Dec. 30, 2024) (denying motion for leave to file a renewed

11   class certification motion).

12        Though Plaintiffs and Proposed Settlement Class Counsel strongly believe in the merits of

13   the claims asserted, Plaintiffs and Proposed Settlement Class Counsel acknowledge that proving

14   causation and damages in the emerging area of data breach cases can be difficult and is by no means

15   guaranteed. *See, e.g.*, *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOX), 2022 WL 18278431,

16   at *4 (C.D. Cal. Nov. 21, 2022) (explaining that data breach class actions are a relatively new type

17   of litigation and that damages methodologies in data breach cases are largely untested and have yet

18   to be presented to a jury). Continued litigation would require formal discovery, depositions, expert

19   reports, obtaining and maintaining class certification throughout trial, and summary judgment, as

20   well as possible appeals (interlocutory and/or after the merits). (Federman Decl., ¶¶ 15–16). This

21   would also require additional rounds of briefing and the possibility of no recovery at all. (*Id.*). The

22   settlement achieved here guarantees relief to the Settlement Class whereas further protracted

23   litigation would not. (*Id.*).

24        For the reasons stated above, these factors heavily weigh in favor of preliminary approval.

25   *See La Caria v. Northstar Location Servs., LLC*, No. 218CV00317GMNDJA, 2021 WL 94477, at

26   *4 (D. Nev. Jan. 11, 2021) ("Because settlement eliminates this lengthy process and further

27   litigation may not improve the outcome, the Court finds that the first two factors weigh in favor of

28

granting preliminary approval."); *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (citing 4 A Conte & H. Newberg, Newberg on Class Actions, § 11:50 at 155 (4th ed.2002); *Perez v. Bodycote Thermal Processing, Inc.*, No. CV 22-00145 RAO, 2024 WL 4329057, at *7 (C.D. Cal. Aug. 23, 2024) (granting final approval after noting "[h]ad the case not settled when it did, additional costs for discovery and litigation would have been incurred, which would have resulted in less money available for Class Members for any later settlement"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) (granting final approval where "further litigation would have been costly and uncertain and would have detrimentally delayed any potential relief for the Class," whereas the relief provided by settlement was "timely, certain, and meaningful"); *Hashemi*, 2022 WL 2155117, at *7 ("In short, given the ongoing risks and uncertainties of data breach litigation, as well as the fact that the Settlement provides significantly greater value per Class Member as compared to similar data breach class action settlements, the Court concludes that the Settlement amount is within the range of approval.").

**E. Fed. R. Civ. P. 23(e)(2)(C)(iii): the Terms of Any Proposed Award of Attorneys' Fees.**

Rule 23(e)(2)(C)(ii) requires consideration of "the terms of any proposed award of attorney's fees, including timing of payment." Pursuant to the terms of the Settlement Agreement, Proposed Settlement Class Counsel are permitted to seek: (i) up to one-third (1/3) of the Settlement Fund to pay for Proposed Settlement Class Counsel's attorneys' fees, costs, and expenses. (SA, ¶ 7.1). The anticipated fee request falls in line with other class action cases and is within the range of approval. *See, e.g.*, *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *8 (C.D. Cal. Sept. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (collecting cases awarding 33% of the common fund); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at *4 (C.D.

1  Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage

2  of the fund award in class actions is approximately one-third."); *In re Stable Rd. Acquisition Corp.*,

3  No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *13 (C.D. Cal. Apr. 23, 2024) (noting that

4  in most common fund cases the fee award exceeds the 25% benchmark).

5      The anticipated fee request also falls in line with the amount awarded in other data privacy

6  cases across the nation. *See, e.g.*, *In re Novant Health, Inc.*, No. 1:22-CV-697, 2024 WL 3028443

7  (M.D.N.C. June 17, 2024) (collecting cases awarding one-third of the common fund and approving

8  the same); *Krant v. UnitedLex Corp.*, No. 23-2443-DDC-TJJ, 2024 WL 5187565, at *7 (D. Kan.

9  Dec. 20, 2024) ("[A] one-third fee also aligns with those awarded by other courts in data breach

10  class action cases."); *In re Forefront Data Breach Litig.*, No. 21-CV-887, 2023 WL 6215366, at *8

11  (E.D. Wis. Mar. 22, 2023) (awarding one-third of the settlement fund).

12      Accordingly, this factor supports preliminary approval.

13      **F.  Fed. R. Civ. P. 23(e)(2)(C)(iv): Any Agreement Required to be Identified.**

14      Other than the Settlement Agreement and the agreement with the Claims Administrator to

15  provide notice of the Settlement to the Settlement Class (if preliminarily approved) there are no

16  other agreements required to be identified.

17      **G. Fed. R. Civ. P. 23(e)(2)(C)(ii): the Method of Distributing Relief is**

18         **Effective.**

19      "[T]he effectiveness of any proposed method of distributing relief to the class, including

20  the method of processing class-member claims," is also a relevant factor in determining the

21  adequacy of relief. Fed. R. Civ. P. 23(e)(2)(C)(ii).

22      The notice program and Claim Form were designed to encourage the filing of valid claims

23  by Settlement Class Members. To file a claim, Settlement Class Members need only complete a

24  simple Claim Form and submit it with documentation supporting any claimed losses or alternatively

25  select a *pro rata* cash payment and/or credit monitoring services. Settlement Class Members may

26  submit claims online or through the mail. This procedure is claimant-friendly, efficient, cost-

27  effective, proportional and reasonable under the particular circumstances of this case. Accordingly,

28

1  the methods of distributing relief to Settlement Class Members further support that the Settlement

2  is fair, reasonable, and adequate.

3      **H. Fed. R. Civ. P. 23(e)(2)(D): Class Members are Treated Equitably Relative to**

4          **Each Other.**

5      Rule 23(e)(2)(D) requires that the settlement "treat[] class members equitably relative to

6  each other." Fed. R. Civ. P. 23(e)(2)(D). The proposed settlement does not discriminate between

7  any segments of the Settlement Class. All Settlement Class Members are eligible to submit a claim

8  for Documented Monetary Losses up to $10,000.00 and a Pro Rata Cash Payment. (SA, ¶¶ 42–43).

9  Additionally, Settlement Class Members may submit a claim for credit monitoring services. (*Id.* ¶

10  44). The only difference among Settlement Class Members is that those who have substantiated

11  financial losses will be compensated for those losses.

12      While the named Plaintiffs will seek service awards of $2,500.00 each for their services on

13  behalf of the Settlement Class, service awards of this amount are regularly approved in this Circuit.

14  *Wahl v. Yahoo! Inc.*, No. 17-CV-02745-BLF, 2018 WL 6002323, at *6 (N.D. Cal. Nov. 15, 2018)

15  (awarding service award of $5,000.00 where the parties participated in informal discovery); *In re*

16  *Banner Health Data Breach Litig.*, No. 2:16-CV-02696-SRB, 2020 WL 12574227, at *7 (D. Ariz.

17  Apr. 21, 2020) (awarding service awards of $5,000.00 in data privacy case); *Lee v. Enter. Leasing*

18  *Co.-W.*, No. 3:10-CV-00326-LRH, 2015 WL 2345540, at *11 (D. Nev. May 15, 2015) (approving

19  service awards of $10,000.00 each); *Sinanyan v. Luxury Suites Int'l*, LLC, No.

20  215CV00225GMNVCF, 2018 WL 815551, at *6 (D. Nev. Feb. 8, 2018) (similar). Therefore, this

21  factor supports preliminary approval.

22      **I.  *Hanlon* Factor 7: the Reaction of the Class.**

23      At the preliminary approval stage, evaluation of this factor is premature because notice of

24  the settlement has not yet been disseminated to the Settlement Class. Thus, this factor is neutral.

25  **V.  THE COURT SHOULD PROVISIONALLY CERTIFY THE CLASS FOR**

26      **SETTLEMENT PURPOSES**

27

28

16

1    After ensuring that the Settlement is fair, adequate, and reasonable, the Court must ensure

2    that the four (4) requirements of Federal Rule of Civil Procedure 23(a) and at least one of the

3    requirements of Rule 23(b) are met. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

4    (1997); *Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003). Under Rule 23(a), the plaintiffs

5    must show that the class is sufficiently numerous, that there are questions of law or fact common

6    to the class, that the claims or defenses of the representative parties are typical of those of the class,

7    and that the representative parties will fairly and adequately protect the class's interests. Fed. R.

8    Civ. P. 23(a).

9         **A.  The Settlement Class Meets the Requirements of 23(a).**

10        ***Numerosity.*** Rule 23(a) requires that a class be "so numerous that joinder of all members is

11    impracticable." Fed. R. Civ. P. 23(a)(1). A class of more than forty individuals generally satisfies

12    the numerosity requirement. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590,

13    602–03 (C.D. Cal. 2015). Here, there are approximately 31,676 Settlement Class Members. (SA at

14    p. 1).    Joinder is therefore impracticable, and the Settlement Class satisfies the numerosity

15    requirement under Rule 23. *Acuna*, 324 F.R.D. at 380 (certifying settlement class of 259

16    individuals).

17        ***Commonality.*** The Settlement Class also satisfies the commonality requirement, which

18    requires that class members' claims "depend upon a common contention." *Wal-Mart Stores, Inc. v.*

19    *Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all

20    center on [defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot,*

21    *Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *2 (N.D.

22    Ga. Aug. 23, 2016). Indeed, common questions include, *inter alia*, (i) whether Settlement Class

23    Members' PII was compromised in the Data Incident; (ii) whether Defendant owed a duty to

24    Plaintiffs and Settlement Class Members to protect their PII; (iii) whether Defendant breached its

25    duties; and (iv) whether Defendant violated common law and statutory violations. Thus, the

26    commonality requirement is easily met.

27

28

17

*Typicality.* Plaintiffs satisfy the typicality requirement under Rule 23 because their claims, which are based on Defendant's alleged failure to protect the PII of Plaintiffs and all members of the Settlement Class, are reasonably coextensive with those of the absent class members. *See* Fed. R. Civ. P. 23(a)(3). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same inadequate data security that harmed the rest of the Settlement Class. As such, typicality is met here. *See Hanlon*, 150 F.3d at 1020.

*Adequacy.* The adequacy requirement is satisfied where (i) there are no antagonistic interests between named plaintiffs and their counsel and the absent class members; and (ii) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4). Here, Plaintiffs are members of the Settlement Class who allegedly experienced the same injuries and seek, like other Settlement Class Members, compensation for Defendant's alleged data security shortcomings. Plaintiffs have no conflicts of interest with other Settlement Class Members, are subject to no unique defenses, and they and their counsel have and continue to prosecute this case on behalf of the Settlement Class. (Federman Decl., ¶ 13). Further, Proposed Settlement Class Counsel have years of combined experience as class action litigators and are well suited to advocate on behalf of the Settlement Class. Accordingly, the adequacy requirement is satisfied. (*Id.* ¶¶ 13–14).

**B.  The Settlement Class Meets the Requirements of 23(b)(3).**

Plaintiffs also seek to certify the Settlement Class, for settlement purposes only, under Rule 23(b)(3), which has two (2) components: (i) predominance; and (ii) superiority. Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), the Court must find that common questions of law or fact predominate over individual questions and that a class action is the superior method for the fair and efficient resolution of the matter. *Id.* Both requirements are met here.

*Predominance.* The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. As discussed above, common questions predominate over any questions affecting only individual members. Plaintiffs' claims depend on whether Defendant used reasonable data security to protect

their PII. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class Members, and therefore makes a class-wide settlement appropriate. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)'") (citation omitted).

*Superiority.* Furthermore, Class-wide resolution is the only practical method of addressing the alleged violations at issue in this case. There are thousands of Settlement Class Members with modest individual claims, most of whom likely lack the resources necessary to seek individual legal redress. *See Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification."). Because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits and promotes consistency and efficiency of adjudication. *See Amchem*, 521 U.S. at 620. ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems") (emphasis added).

In sum, certification of the Settlement Class, for purposes of settlement, is appropriate.

## VI.    THE PROPOSED NOTICE PROGRAM CONSTITUTES ADEQUATE NOTICE UNDER RULE 23 AND SHOULD BE APPROVED.

Lastly, Plaintiffs request approval of the proposed manner and form of the notice that will be sent to the Settlement Class Members, as described in Section III(E), *supra*, and appointment of RG/2 Claims Administration LLC as the Claims Administrator.

The proposed notice documents, which are attached to the Settlement Agreement as exhibits, clearly and concisely state the nature of the action, a summary of the terms of the proposed settlement, the deadline for requesting exclusion from the Settlement or filing an objection to the Settlement, the consequences of inaction, and will provide the date, time, and place of the final approval hearing. Thus, the notice requirements contained in Federal Rule of Civil Procedure

23(c)(2)(B) are met. *See Evans v. Wal-Mart Store, Inc.*, No. 210CV1224JCMVCF, 2020 WL 886932, at *7 (D. Nev. Feb. 24, 2020) ("The court finds that the notice adequately describes the purpose of the notice, nature of the lawsuit and settlement, potential opt-in plaintiffs' options under the settlement, and the consequences of opting in or out of the settlement. [] Although the notice is simple and straightforward, it nonetheless instructs potential plaintiffs on how to get more information and to whom they should direct their questions.")

Additionally, the Claims Administrator, RG/2 Claims Administration LLC, has a proven track record of successfully administering class action settlements and should be entrusted with the execution of the notice program and the claims administration process.

## VII.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval and enter the Proposed Preliminary Approval Order submitted herewith.

Date:    September 30, 2025                Respectfully submitted,

*/s/: Patrick R. Leverty*
Patrick. R. Leverty, Esq.
NV Bar No. 8840
pat@levertylaw.com
**LEVERTY & ASSOCIATES**
**LAW, CHTD.**
832 Willow Street
Reno, NV 89502
Telephone: (775)322-6636

**FEDERMAN & SHERWOOD**
William B. Federman
*admitted pro hac vice*
Kennedy M. Brian
*admitted pro hac vice*
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Tel: (405) 235-1560
wbf@federmanlaw.com
kpb@federmanlaw.com

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on September 30, 2025, I caused the foregoing to be filed electronically

3  using the Court's electronic case filing (ECF) system, which will automatically send a notice of

4  electronic filing to the email addresses of all counsel of record.

5

6                              */s/: Patrick R. Leverty*
                              Patrick. R. Leverty, Esq.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28